THE CITY OF ELIZABETH, RELATOR, v. THE COURT OF COMMON PLEAS OF THE COUNTY OF ESSEX.

In view of the charter of the city of Elizabeth, approved March 13th, 1855, the legal duty of the Essex Common Pleas now to order recorded a surveyor's return, filed in 1851, for the laying out of a public road within the city limits, is not so clear as to justify a *mandamus* commanding that court to perform it.

On *mandamus*.

I. On the 17th day of June, 1851, Elias Darby and fifty-six other freeholders of the then township of Elizabeth, county of Essex, now the city of Elizabeth, in the county of Union, in this state, filed their petition in and made application to the Court of Common Pleas of said county of Essex for the appointment of surveyors of the highway of said county for the purpose of laying out a public road in said township deemed by them to be necessary and conducive to public interest and convenience, to begin at Thomas Cook's tavern-house, at Elizabethport, and to run in a straight course, in an easterly direction, to Staten Island Sound, four rods in width ; said court thereupon did appoint six of the surveyors of the highways of said county and directed them to meet on the 19th day

of July then next, and proceed as the law directed. By their return, filed in said court July 23d, 1851, the said surveyors did return and report that they had met agreeably to said order, and having in all things complied with the law and fully considered the said application, thought and adjudged the said road as applied for to be necessary, and did accordingly lay out the same and filed a map thereof, with their return, and said return and map are now on file in the clerk's office of Essex county.

II. On the 1st day of August, 1851, the Elizabethport and New York Ferry Company, and on August 4th, 1851, William Gibbons, the only two parties through whose lands said road was laid, filed *caveats* with the clerk of said court against recording the return of said surveyors.

III. On November 1st, 1851, the Elizabethport and New York Ferry Company made application to said court for the appointment of six chosen freeholders of said county to view said road and proceed according to law ; on the same day said Gibbons, by his counsel, stated several grounds why said return should be set aside ; said court granted the application of the ferry company, and appointed the freeholders as prayed for to view and certify in regard to said road, and further ordered that the applicants show cause at the next term of said court why the said return should not be set aside, and that the caveators have leave for thirty days to file their reasons for setting aside the said proceedings and return, and that the said return be not recorded until the further order of said court, and that the parties have leave to take affidavits to be used on the hearing of the said rule.

IV. Nothing appears to have been done afterwards, until April 20th, 1886, when, on application of the city of Elizabeth, a rule was granted by the Essex Common Pleas that the present owners of the land over which the road was laid in 1851 show cause why the *caveats* filed in August, 1851, and the order made in November, 1851, should not be set aside, and why the return of the surveyor, filed in July, 1851, should not be recorded.

V. On the return of this rule to show cause, the Common Pleas discharged the same on the ground that the proceedings to open the road seemed to have been abandoned by the original petitioners, and that the city of Elizabeth was not a party to those proceedings, and had no legal right to revive them.

VI. The city now applies to the Supreme Court for a *mandamus*, directing the Essex Common Pleas to order that the return of the surveyors be recorded.

Argued at February Term, 1887, before Justices KNAPP and DIXON.

For the *mandamus, Frank Bergen.*

*Contra, B. Williamson.*

The opinion of the court was delivered by

DIXON, J. In order to justify the allowance of a writ of *mandamus*, the legal right of the petitioner to the relief which he seeks must be clear. *High on Ex. Rem.*, § 10.

We do not think that the claim made by the petitioner is of this character. Its object is to open a public road over what is now private property, in the city of Elizabeth, and the accomplishment of this by an order of the Court of Common Pleas of Essex county. It is at least doubtful whether any such power resides in that court.

The charter of the city of Elizabeth, approved March 13th, 1855 (*Pamph. L., p.* 217), gave to the city council authority to lay out and open any street, road or highway in any part of the city, and to cause any street, road, highway or alley already laid out in any part of the city to be vacated or opened by proceedings therein set forth (section 32), and also enacted (section 36) that no street, road, highway or alley thereafter to be laid out or opened in said city should be recognized, considered or treated as a public street, road, highway or alley, unless the same were laid out and assessed under the direction of the said city council in manner aforesaid.

When this charter was passed, the road now desired had been laid out, but not opened, and this enactment seems to have been intended to terminate all existing authority to open the same, and to vest the power of opening it in the city council exclusively, to be exercised in the mode pointed out in the charter. The jurisdiction of the Essex Common Pleas over the opening of roads in the city of Elizabeth was never afterwards revived; the city became a part of the new county of Union in 1857. *Pamph. L., p.* 244.

Without attempting to impair the reasons given by the Common Pleas for its refusal to order the recording of the surveyors' return, we deem the foregoing sufficient ground for denying the writ of *mandamus.*